**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| EYVONNE A. WEBB, | * | |
| | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Case No. SAG-24-1950 |
| | * | |
| CARRINGTON MORTGAGE | * | |
| SERVICES LLC, | * | |
| | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Eyvonne A. Webb ("Plaintiff") sued Defendant Carrington Mortgage Services LLC ("Carrington") in Maryland state court, alleging violations of Maryland law relating to Carrington's maintenance of her mortgage escrow account. ECF 2, 2-1.[1] Carrington removed the case to this Court, ECF 1, and has now moved to dismiss, ECF 11. This Court has considered Carrington's motion, Plaintiff's opposition, ECF 12, and Carrington's reply, ECF 16. The Court held a motion hearing on November 1, 2024. ECF 17. For the following reasons, Carrington's motion to dismiss, ECF 11, will be GRANTED, and Plaintiff's claims will be DISMISSED WITHOUT PREJUDICE.

### I.    FACTUAL BACKGROUND

The following facts are derived from Plaintiff's Complaint, ECF 2, and are taken as true for the purpose of evaluating the motion to dismiss, ECF 11. *Wikimedia Found. v. Nat'l Sec.*

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

*Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).

Plaintiff owns a home and real property located at 922 Lenton Avenue in the City of Baltimore ("Webb Property"), subject to a ground lease. ECF 2 ¶ 3. In February 2009, Plaintiff obtained a mortgage loan, secured by a Deed of Trust, ECF 11-3. *Id*. ¶ 3; ECF 11-2 at 5 & n.1. In 2014, Plaintiff's original mortgage lender assigned the deed of trust to Carrington. ECF 2 ¶¶ 3-4; ECF 11-4. As a result of the assignment, Carrington acquired "all beneficial interest" under the Deed of Trust "together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue." ECF 11-4 at 2. The Deed of Trust requires Plaintiff to pay, on a monthly basis, "a sum for… taxes and special assessments levied or to be levied against the [Webb Property]," along with the principal and interest amounts due on her loan and premiums for homeowner's insurance. ECF 11-3 at 3. The Deed of Trust permits the lender to "collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act [12 U.S.C. §§ 2601 *et seq.* (RESPA)]" and its implementing regulations. *Id*.

According to Plaintiff, she has been eligible for and has received property tax credits from the City of Baltimore and the State of Maryland in 2022-2023 and 2023-2024, which reduced the property taxes owed on the Webb Property for these tax years. ECF 2 ¶¶ 21-22 (summarizing three types of property tax credits Plaintiff received). However, Plaintiff claims that, despite having knowledge of Plaintiff's tax credits, Carrington failed to account for the credits in its routine calculations of Plaintiff's annual escrow account. *Id*. ¶¶ 24-25. Thus, Plaintiff alleges that Carrington discriminated against her by wrongfully "demanding excessive sums from her which

are not lawfully due in light of [her] protected source of income due to tax credits she is eligible for and has been awarded." *Id*. ¶ 26.

Plaintiff alleges three communications she received from Carrington which she claims exemplify Carrington's "misstatements" and "wrongful demands" for "sums not actually owed." ECF 12 at 7; *see also* ECF 2 ¶ 25. First, on October 14, 2022, Carrington sent Webb an Annual Escrow Disclosure Statement, ECF 11-5 ("2022 Annual Escrow Statement"), stating that Plaintiff owed $3,089.46 in city property taxes by December 31, 2022 (when she actually owed $103.76 as a result of her tax credits). ECF 2 ¶ 25. Then, in correspondence dated January 31, 2023, Carrington, responding to Plaintiff's request for a review of her account, stated that "[t]he annual escrow analysis for this loan was performed in October 2022" and "[a]n updated analysis was performed on December 19, 2022…which projected a new tax amount of $103.76 for both the July 2023 and December 2023 installments…[and] a surplus of $1,485.89" which would be refunded to Plaintiff by check, ECF 11-6 ("January 2023 Letter") at 2; ECF 2 ¶ 25. However, on October 27, 2023, Carrington sent Webb an Annual Escrow Disclosure Statement, ECF 11-7 ("2023 Annual Escrow Statement"), stating that Plaintiff owed $1,659.87 for her July 2023 tax payment and projected the same amount for her December 2023 tax payment. ECF 11-7 at 2. Thus, Plaintiff alleges that because of Carrington's "discriminatory conduct" and failure to honor her tax credits, it wrongfully "demanded" she pay $1,092.28 per month in the 2022 Annual Escrow Statement and $1,359.14 per month in the 2023 Annual Escrow Statement, "when the monthly sum should have been less than $840 per month" in both 2022 and 2023. ECF 2 ¶ 26.

The Complaint raises two counts against Carrington. In Count I, Plaintiff claims that Carrington unlawfully discriminated against Plaintiff "by requiring and demanding [her] to pay property taxes she does not owe because of her protected source of income (i.e. tax credits)" in

violation of the Maryland Fair Housing Act, Maryland Code, State Government § 20-707 (MFH). *Id*. ¶ 35. In Count II, Plaintiff alleges that the same conduct also violated Maryland's Consumer Debt Collection Act, Maryland Code, Commercial Law §§ 14-201 *et seq.* (MCDCA), and Consumer Protection Act, Maryland Code, Commercial Law §§ 13-301 *et seq.* (MCPA). *Id*. ¶¶ 40-52.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]" (quotations omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555.  Further, federal pleading rules "do not

countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

### III.    ANALYSIS

### A.  Maryland Fair Housing Act (Count I)

Plaintiff alleges that Carrington violated the MFH in how it maintained her escrow account because it ignored property tax credits that Plaintiff received in 2022 and 2023, thereby discriminating against her based on her "source of income" in violation of Maryland Code, State Government § 20-707. ECF 12 at 9; *see* ECF 2 ¶ 35. In its motion to dismiss, Carrington raises three reasons for this Court to dismiss Plaintiff's claim under the MFH. First, Carrington argues that, because it did not engage in a "residential real estate-related transaction," as defined in § 20-707(a), the MFH is inapplicable here. ECF 11-2 at 9-10. Second, Carrington argues that Plaintiff's claim under the MFH must fail because she has not identified any "source of income" discrimination. *Id*. at 12-13. Finally, Carrington argues that Plaintiff cannot meet the burden under the standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to sustain her discrimination claim. *Id*. at 13-15. Because Carrington prevails on its second argument, the Court does not reach Carrington's *McDonnell Douglas* argument.

### i. § 20-707(a), (b)

The MFH authorizes "an aggrieved person" to "commence a civil action… to obtain appropriate relief for an alleged discriminatory housing practice… ." Md. Code, State Gov't § 20-1035(a). The term "discriminatory housing practice" encompasses conduct prohibited under multiple sections of the law, including § 20-707. *Id*. § 20-1020(e). Count I of the Complaint is based on § 20-707(b), which provides that "[a] person whose business includes engaging in residential real estate-related transactions may not discriminate against any person in making available a transaction, or in the terms or conditions of a transaction, because of race, color, religion, sex, disability, marital status, familial status, sexual orientation, gender identity, national origin, source of income, or military status." Md. Code, State Gov't § 20-707(b)(1). The MFH defines "residential real-estate related transaction" as "(1) making or purchasing of loans or

6

providing other financial assistance: (i) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (ii) secured by residential real estate; or (2) the selling, brokering, or appraising of residential real property." *Id*. § 20-707(a).

The parties disagree as to whether Carrington's servicing of Plaintiff's loan and escrow account qualifies as a "residential real estate-related transaction" under the MFH. ECF 12 at 10-13; ECF 11-2 at 10-12; *see* Md. Code, State Gov't § 20-707(a), (b). Carrington claims that, even if Plaintiff's allegations are true, it did not engage in any "residential real-estate related transactions" as defined under the MFH because it has not extended a loan or provided other financial assistance to Plaintiff, and the MFH does not apply to Carrington's loan servicing activities occurring a decade after Plaintiff's loan originated. ECF 11-2 at 10. In support, Carrington argues that this Court should decline to extend the MFH to activities beyond origination of the loan because some federal courts have determined that a loan servicer's activities after loan origination did not constitute "real estate-related activities" as defined in a provision of the federal Fair Housing Act, 42 U.S.C § 3605 (FHA). *Id*. at 10-11.

Case law analyzing the meaning of "residential estate-transactions" in the federal counterpart to the MFH is instructive here because the definition of this phrase in the relevant provision of the FHA, 42 U.S.C. § 3605, is virtually identical to that in § 20-707 of the MFH. Like § 20-707, § 3605 requires that the entity be one "whose business includes engaging in residential real estate-related transactions." 42 U.S.C. § 3605(a). Further, as in § 20-707, § 3605 defines "residential real estate-related transaction," in relevant part, to encompass the "making or purchasing of loans or providing other financial assistance" for "maintaining a dwelling" or "secured by residential real estate." *Id.* § 3605(b)(1)(A)-(B). Plaintiff finds support for her MFH claim in *Davis v. Moneysource*, No. 3:21-CV-00047, 2021 WL 3861908 (D. Conn. Aug. 30, 2021),

7

where the court found that "the term 'residential real estate-related transaction'… encompasses more than the making of loans" and includes "the purchasing of loans or providing other financial assistance." *Id.* at *8 (citing 42 U.S.C. § 3605(b) and noting that "[i]f the term 'residential real estate-related transaction' were limited to the making of loans, this additional language would not be included in the definition"); *see also Nat'l Fair Housing Alliance, Inc. v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d, 46, 58 (D.D.C. 2002) (finding that real estate-related transactions under § 3605(b) include "the financial assistance necessary to maintain a dwelling"). The *Davis* court also focused on the language of § 3605(a), finding that the statute prohibits discrimination in both "making available" a real estate-related transaction and "in the terms or conditions of such a transaction." *Davis*, 2021 WL 3861908, at *7.

Other federal courts have also found that the language of "§ 3605 applies to the making or purchasing of loans or providing other financial assistance for maintaining a dwelling previously acquired." *Eva v. Midwest Nat'l Mortg. Bank, Inc.*, 143 F. Supp. 2d 862, 886 (N.D. Ohio 2001). In *Eva*, the court found that the plain language of § 3605 does not, as the defendant argued, "require a defendant to be a mortgage lender, banker, mortgage arranger or creditor" but "merely requires that the entity conduct business which '*includes* engaging in residential real estate-related transactions'… such activity need only be 'included' as one portion of its overall functioning." 143 F. Supp. 2d at 889 (citing § 3605 (emphasis in original)). The *Eva* court also found that the term "residential real estate-related transaction" "applies to, *inter alia*, 'providing other financial assistance for maintaining a dwelling.'" *Id.* (citing § 3605(b)(1)(A)-(B)).

Nowhere does § 3605 of the FHA, or § 20-707 of the MFH for that matter, require "other financial assistance" to be in the form of a loan or otherwise. Rather, the term "other financial assistance" is not specifically defined in the FHA or the MFH. 42 U.S.C. § 3605; Md. Code, State

Gov't § 20-707; *see Eva*, 143. F. Supp. 2d at 889-90 (upholding FHA claim under § 3605 against defendant company managing program which pays one extra mortgage payment per year from borrower's checking account because this "conduct alone may be construed as providing other financial assistance for maintaining a dwelling"). Carrington's actions in servicing Plaintiff's mortgage by collecting and paying required sums from escrow "is not too far removed from transactions in the commercial residential market, nor is it lacking any connection to the financing of residential real estate as to warrant dismissal" of Plaintiff's claim under § 20-707. *See Eva*, 143 F. Supp. 2d at 889.

The cases Carrington cites in support of its argument that it did not engage in a "residential real estate-related transaction" are distinguishable. In *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283 (N.D.N.Y. 2008), the plaintiff, who was legally blind, claimed that the defendant lender discriminated against her in violation § 3605 of the FHA "by not providing her with financial assistance afforded to similarly situated individuals" and thereby causing her to default on her mortgage. *Id*. at 289-90. While the plaintiff claimed that the defendant "misrepresent[ed] escrow payment information," her allegations under § 3605 centered on defendant's "call centers and hotlines that assist defaulted borrowers" and that their failure to assist her amounted to discrimination. *Id*. at 287, 290. The court found this reasoning flawed because a "real estate-related transaction" under § 3605 "does not include assistance for borrowers who have defaulted on their loans." *Id*. at 290. Additionally, the court found that the plaintiff had "offered only conclusory allegations to demonstration that discriminatory measures were implemented because of her disability, and that 'able-bodied' persons were not affected." *Id*. In contrast to the plaintiff in *Gorham-DiMaggio*, Plaintiff's discrimination claim is not based on being denied financing options after defaulting on her mortgage, but instead on being required to pay unlawful

escrow sums in connection with her existing mortgage. ECF 2 ¶¶ 7-8, 26.[2] The conduct Plaintiff alleges is sufficient to fall within the scope of § 20-707 and the statutorily defined "residential real estate-related transaction."

### ii.   § 20-701(j)

Plaintiff's claim in Count I is that Carrington discriminated against her based on her "protected 'source of income' benefits," *i.e.*, the "property tax credits related to her home and the Webb Property based upon her income and age," in violation of § 20-707(b). ECF 2 ¶¶ 31, 34. In response, Carrington argues that "Plaintiff's receipt of property tax credits…cannot constitute a 'source of income'" under the MFH. ECF 11-2 at 12-13. The MFH defines "source of income" as "any lawful source of money paid directly or indirectly to or on behalf of a renter or buyer of housing," including income from "any government or private assistance, grant, loan, or rental assistance program…the sale or pledge of property or an interest in property." Md. Code, State Gov't § 20-701(j). Plaintiff claims that the statute's definition of "source of income" is broad and encompasses "the protected government assistance (in the form of tax credits) that she received and continues to receive but Carrington knowingly fails to recognize." ECF 12 at 12-13. However, she fails to substantiate this assertion this under the law.

Plaintiff claims that "[i]n the past two years…[she] has declared eligible for and received certain government assistance in the form of tax credits to reduce the property taxes lawfully owed

---

[2] The other cases Carrington cites in support of its position are unavailing for similar reasons. *See* ECF 11-2 at n.6. *Sampson* addresses "assistance with avoiding foreclosure or providing a service to assist in a loan modification," and the court found that these activities did "not constitute the providing of financial assistance for maintaining a dwelling" to support a claim within the scope of § 3605. *Sampson v. All Am. Home Assistance Servs., Inc.*, No. 13-cv-495, 2013 WL 12322089, at *10 (N.D. Ga. Mar. 7, 2013). *Jones* and *Beard* involved § 3605 claims not against a lender or servicer but against a title company (*Jones v. Countrywide Home Loans, Inc.*, No. 09 C 4313, 2010 WL 551418, at *7 (N.D. Ill. Feb. 11, 2010)) and settlement agents (*Bear v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789, 809 (W.D. Tenn. 2005)).

on the Webb Property," including: 1) the Baltimore City Homestead Credit;[3] 2) Homeowners' Property Tax Credit Program;[4] and 3) a Special Credit. ECF 2 ¶¶ 21-22. Plaintiff simply states that the "real estate tax credits" she received are "government assistance" and thus "sources of income" under § 20-701(j) (and the municipal statute, Balt. City Code Art. 4, § 1-2(x), which includes substantially the same definition of "source of income" as § 20-701(j)). ECF 2 ¶ 21. But the plain language of the statute states otherwise. *See Bennett v. State Dep't Assessments & Tax'n*, 908 A.2d 759, 763 (Md. 2006) (finding that "[t]he meaning of a statute is a question of law," and if "statutory language is clear and unambiguous" given its "plain and ordinary meaning," the court "simply appl[ies] the statute as it reads" (citations omitted)). The property tax credits Plaintiff received were not a "lawful source of money paid directly or indirectly to" her. Md. Code, State Gov't § 20-701(j). Instead, these credits were applied directly to Plaintiff's tax bill to reduce the amount of property tax Plaintiff owed on the Webb Property. *See* ECF 2 ¶ 21; ECF 11-5; ECF 11-7; Md. Code, Tax- Prop. § 9-105(h) (Homestead Tax Credit "shall be included on the homeowner's tax bill"); *Id*. § 9-104(f) ("A homeowner who meets the requirements of this section shall be granted the property tax credit under this section against the property tax imposed on the real property of the dwelling."); *see also Bennett*, 908 A.2d at 765 ("The purpose of the [Homeowner's Property Tax Credit] legislation is to protect homeowners without significant assets from having to sell their

---

[3] The Homestead Property Tax Credit protects homeowners from increases in tax assessments by limiting increases in taxable assessments on owner occupied properties. *See* Md. Code, Tax-Prop. § 9-105. "The credit is applied against taxes due on the portion of the reassessment exceeding" Baltimore City's 4% homestead cap and is "applied directly to the property owner's tax bill;" this tax credit is based on home ownership and residing in the property. *See* https://finance.baltimorecity.gov/sites/default/files/Homestead.pdf.

[4] The Homeowners' Property Tax Credit Program "sets a limit on the amount of property taxes any homeowner must pay based upon his or her income," which consists of "all monies received in the applicant's household in a given year." *See* Md. Code, Tax- Prop. § 9-104; https://dat.maryland.gov/realproperty/Pages/Homeowners'-Property-Tax-Credit-Program.aspx.

homes because they can no longer afford to pay their rising property taxes."); *State Dep't of Assessments & Tax'n v. Glick*, 422 A.2d 34, 40 (Md. 1980) (describing the prior version of Homeowner's Property Tax Credit, known as the "circuit breaker" law, as granting "a credit against a tax on real property which the homeowner would otherwise be obliged to pay" and "a relief from a burden which must otherwise be borne by homeowners"); *Wargo v. State Dep't of Assessments & Tax'n*, 490 A2d. 1304, 1305-06 (Md. 1985) ("Eligible persons may have their property tax bills reduced in proportion to their ability to pay as determined by the parameters of the program."); *State Dep't of Assessments & Tax'n v. Belcher*, 553 A.2d 691, 692 (Md. 1989) ("[W]hen the taxpayer's residential property tax bill reaches a set percentage of his annual income, the circuit breaker is automatically activated so that the state government grants him relief from the excess tax load. Maryland grants relief in the form of a credit…" to reduce the taxpayers property tax liability).

Although there is a lack of Maryland case law specifically addressing whether a tax credit constitutes a "source of income" under § 20-701(j), other states' case law is helpful here. In *Ferrero v. Walton Township*, 813 N.W.2d 368 (Mich. Ct. App. 2012), the Michigan Court Appeals examined whether a homestead property tax credit should be treated as income for the purposes of assessing whether plaintiff qualified for a separate property tax exemption based on income. Even though the tax credit at issue effectively functioned as a refund, in that it did not reduce the base property tax owed but rebated a portion of the taxes the taxpayer already paid, the *Ferrero* Court still found it did "not confer income" and was not "a program to transfer new monies to individuals." *Id*. at 370-71 (concluding that "refunds are not considered income").

Here, the tax credits Plaintiff received did not confer income or result in new monies being transferred to her, either directly or indirectly. *See id*.; *see also Eisner v. Macomber*, 252 U.S. 189,

207 (1920) ("Income may be defined as the gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets." (internal citation omitted)); *Lukhard v. Reed*, 481 U.S. 368, 374-75 (1987) ("general and legal sources define 'income' as involving gain" and also commonly define 'income' to mean 'any money that comes in'"); Md. Code, Tax- Prop. § 9-105(a)(8)(ii), (iii) ("'Gross income' includes… public assistance received in a cash grant [but] does not include…any income tax refund received from the State or federal government"). As defined under § 20-701(j), "source of income" does not clearly and unambiguously include real estate tax credits, and the Court cannot extend the scope of this language by giving it "a forced, strained, or unnatural construction." *See Belcher*, 553 A.2d at 695. Thus, Plaintiff has not stated a claim under MFH § 20-707 for discrimination based on source of income because she has not alleged a "source of income" under the statute.[5] *See Twombly*, 550 U.S. at 555, 570 (a complaint providing no more than "labels and conclusions" is insufficient). Accordingly, Count I of the Complaint is dismissed.

### B. MCDCA and MCPA Allegations (Count II)

Under Count II, Plaintiff alleges that Carrington violated the MCDCA and the MCPA by using unlawful methods to collect upon the Webb Loan. ECF ¶¶ 37-52. Carrington argues that the Complaint fails to state a claim that it violated the MCDCA and the MCPA. ECF 11-2 at 15-26. The MCDCA and MCPA are "remedial consumer protection statutes aimed at protecting the public from unfair or deceptive trade practices by creditors engaged in debt collection activities" and "must be liberally construed, in order to effectuate their broad remedial purpose." *Alexander v.*

---

[5] To the extent the Complaint asserts a claim under Balt. City Code Article 4, § 3-5, *see*, *e.g.*, ECF 2 ¶ 14, 39, it fails for the same reasons and because that statute does not provide a private right of action. *See* Balt. City Code Art. 4, § 4.

*Carrington Mortg. Servs., LLC*, 23 F.4th 370, 372, 374 (4th Cir. 2022) (citations and alterations omitted).

### i.     MCDCA

The MCDCA "prohibits debt collectors from engaging in an extensive list of practices," *Alexander*, 23 F.4th at 372, and each prohibited act must be "[i]n collecting or attempting to collect an alleged debt." Md. Code, Com. Law § 14-202. Carrington's argument that its servicing of the Webb Loan "is simply not conduct regulated by the MCDCA," ECF 11-2 at 17, is foreclosed by the Fourth Circuit's decision in *Alexander*, which declined to find a distinction between loan servicing and debt collection such that the former was exempted "from the MCDCA's reach." 23 F.4th at 375 (noting that the MCDCA's broad definition of "collector" controls and "by collecting borrowers' monthly mortgage payments, Carrington is collecting a debt" and "counts as a 'collector' under the MCDCA").[6]

Plaintiff's claims in Count II arise under § 14-202(11) and § 14-202(8) of the MCDCA. ECF ¶¶ 37-46. Section 14-202(11) of the MCDCA incorporates several substantive provisions of the federal Fair Debt Collection Practice Act (FDCPA), and Plaintiff claims that Carrington has violated 15 U.S.C. §1692e and § 1692f. ECF 2 ¶¶ 40-41, 44. Thus, to succeed on her § 14-202(11) claims, Plaintiff must allege an underlying violation of the FDCPA.

Section 1692e of the FDCPA forbids the use of "any false, deceptive, or misleading representation" in the collection or attempted collection of any debt. Whether a statement is false, misleading, or deceptive for the purposes of the FDCPA is determined according to the standard of the "least sophisticated consumer." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385,

---

[6] In support of its argument that "simply maintain[ing] the Webb] Loan's escrow account…is not debt collection," ECF 11-2 at 16, Carrington relies on cases that are unavailing because they predate the Fourth Circuit's decision in *Alexander*, 23 F.4th at 375. *See* ECF 11-2 at 16-17.

394-95 (4th Cir. 2014). This standard does not encompass a consumer's "bizarre or idiosyncratic interpretations," but instead how a "naïve" consumer with "a quotient of reasonableness" would interpret a potentially false, deceptive, or misleading representation. *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996). To be actionable under § 1692e, a statement must also be "material" in that it could "objectively affect the least sophisticated consumer's decision-making." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014). For example, a demand letter that "misstates interest as principal but accurately states the total amount owed" would constitute a technical, not a material, error. *Id.*

Through § 1692f, the FDCPA also protects debtors from collectors' efforts to "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA does not define what may be "unfair" or "unconscionable" but provides a "non-exhaustive list of conduct that violates the section." *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 366 (D. Md. 2010). Such practices include "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1). Section 1692f has been described as a "backstop" enacted by Congress "that would enable 'courts, where appropriate, to proscribe other improper conduct ... not specifically addressed' by the statute." *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 240 n.4 (2017) (Sotomayor, J., dissenting) (quoting S. Rep. No. 95–382, at 4 (1977)). Notably, several courts have construed § 1692f as prohibiting conduct that is not specifically provided for in other provisions of the FDCPA. *See Stewart v. Bierman,* 859 F. Supp. 2d 754, 765 (D. Md. 2012) ("Plaintiffs' § 1692f claim should be dismissed because Plaintiffs fail to allege any misconduct separate and distinct from the § 1692e claims.") (collecting cases). Thus, to prevail on a § 1692f claim, a plaintiff must allege conduct that is "separate and distinct" from

other alleged FDCPA violations. *Archie v. Nagle & Saller, P.C.*, 790 F. App'x 502, 503 n.1 (4th Cir. 2019).

To support her allegations under § 1692e, Plaintiff claims that Carrington used "false, deceptive, and misleading representations or means to collect the Webb Loan." ECF 2 ¶ 40. In support of her allegations under § 1692f, Plaintiff states that Carrington used "unfair and unconscionable means to collect or attempt to collect the Webb Loan" and that Carrington "never reasonably verified its asserted rights" or "conducted any reasonable investigation" before seeking sums that Plaintiff allegedly did not owe. *Id.* ¶¶ 41, 44. In response, Carrington states that because the Deed of Trust and federal law permit it to estimate amounts that will be owed for property taxes and homeowners insurance for the coming year and "to collect a certain amount as a cushion in the escrow account," Plaintiff has not alleged any conduct by Carrington amounting to a violation of §1692e and § 1692f . ECF 11-2 at 23-24.

To state a claim for relief under either § 1692e or § 1692f, Plaintiff must allege that (1) she "has been the object of collection activity arising from a consumer debt," (2) that Carrington is a debt collector as defined under the FDCPA, and (3) that Carrington has "engaged in an act or omission prohibited by the FDCPA." *Best v. Fed. Nat'l Mortg. Ass'n,* 450 F. Supp. 3d 606, 623 (D. Md. 2020). The basis of Plaintiff's argument is that Carrington violated the FDCPA by "wrongful[ly] demand[ed]…hundreds of dollars more from Webb than she lawfully owes" in two escrow statements. ECF 12 at 5; ECF 2 ¶ 25; ECF 11-5 (2022 Escrow Statement); ECF 11-7 (2023 Escrow Statement).[7] However, Plaintiff has not sufficiently alleged that Carrington attempted to collect a debt from her.

---

[7] While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, *Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011), a court may consider documents referred to and relied upon in the complaint

Congress enacted the FDCPA for the purposes of eliminating "abusive, deceptive, and unfair *debt collection practices*." 15 U.S.C. § 1692 (emphasis added). Thus, the "threshold requirement for application of the [FDCPA] is that prohibited practices are used in an attempt to collect a debt." *Palazzo v. Bayview*, No. DLB-20-2392, 2024 WL 4361857, at *6 (D. Md. Sept. 30, 2024) (alteration in original); *see also* 15 U.S.C. § 1692e (prohibiting deceptive or misleading representations "in connection with the collection of any debt"); *id.* § 1692f (prohibiting unfair or unconscionable means "to collect or attempt to collect any debt").

While the FDCPA does not define debt collection or attempted debt collection, *see* 15 U.S.C. § 1692 *et seq.*, courts have held that "not every communication from a debt collector to a debtor is a debt collection or an attempt to collect a debt under the FDCPA." *Id.* at *7 (citing *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384–85 (7th Cir. 2010). In *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016), the Fourth Circuit articulated a "commonsense inquiry" test to determine if a communication is an attempt to collect debt for purposes of the FDCPA. Courts examine "the 'nature of the parties' relationship,' the '[objective] purpose and context of the communication[ ],' and whether the communication includes a demand for payment." *Id.* (quoting *Gburek*, 614 F.3d at 385 (alteration in original)). Even if it does not contain "an explicit demand for payment," a communication may still be an attempt to collect a debt. *Id.* (quoting *Gburek*, 614 F.3d at 382).

---

("even if the documents are not attached as exhibits"), *Fare Deal Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001), as well as those attached to the motion to dismiss and authentic, *Blankenship v. Machin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). While the 2022 and 2023 Escrow Statements are not attached to the Complaint, they are referred to and relied on therein, *see, e.g.*, ECF 2 ¶ 25, are attached to the motion to dismiss, ECF 11-5, 11-7, and neither party disputes their authenticity.

Beginning with the first step in the commonsense inquiry test, the nature of the parties' relationship in the two escrow statements on which Plaintiff bases her claim is that of debtor and debt collector. ECF 11-5; ECF 11-7; *see* ECF 2 ¶ 25 (citing 2022 Escrow Statement and 2023 Escrow Statement); *Palazzo*, 2024 WL 4361857, at *7. But, evaluating the remaining components of the inquiry – the objective purpose and context of the communications and whether the communications included a demand for payment – requires analysis of the language in those two escrow statements.

Importantly, both the 2022 and 2023 Escrow Statements include the following disclaimer: "This statement is informational only and requires no action on your part." ECF 11-5 at 2; ECF 11-7 at 2. Moreover, the 2022 and 2023 Escrow Statements do not contain a demand for payment, "were not sent for the 'animating purpose' of obtaining payment," and were informational and nonthreatening.[8] *See Palazzo*, 2024 WL 4361857, at *8-*9 (quoting *In re Dubois*, 834 F.3d at 247). Plaintiff argues that both the 2022 and 2023 Escrow Statements constitute attempts to collect upon a debt for the purposes of the FDCPA because "'informational' statements can be attempts to collect." ECF 12 at 24-26. She relies on *Hawthorne v. Rushmore Loan Management Services, LLC*, No. 20-cv-393, 2023 WL 6388928 (D. D.C. Sept. 29, 2023), and *Daniels v. Select Portfolio*

---

[8] Although the 2022 and 2023 Escrow Statements include a generic statement noting that the correspondence is from a debtor collector and is an attempt to collect a debt, ECF 11-5 at 3, 11-7 at 3, courts have found that such a statement will "not automatically trigger the protections of the FDCPA" and "[w]hether debt collector correspondence is an attempt to collect a debt turns on the language in the correspondence and other case-specific facts." *Palazzo*, 2024 WL 4361857, at *10. As discussed, the language and circumstances surrounding the 2022 and 2023 Escrow Statements made clear that they were not attempts to collect a debt. *See id*.; *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 334 (4th Cir. 2012) ("if the use of the statutorily required disclaimer is sufficient to establish an FDCPA claim, debt collectors will be placed in a conundrum, exposed to liability for both including the disclaimer and for omitting it").

*Servicing, Inc.*, 34 F.4th 1260 (11th Cir. 2022), in support of her argument. ECF 12 at 24-26. However, Plaintiff's reliance on these cases is misplaced.

The communications at issue in *Hawthorne*, a letter detailing the "business decision to retract [Hawthorne's] escrow analysis and return [her] loan back to its original state prior to the analysis" and other documents detailing the amount Hawthorne owed the defendant debt collector, differ from the 2022 and 2023 Escrow Statements. *Hawthorne*, 2023 WL 6388928, at *9. The *Hawthorne* court could not "foreclose the possibility that a reasonable jury could find that the…letter contained an inducement to settle a debt" because the letter provided that any surplus in Hawthorne's escrow would not be refunded but would instead be credited against the next year's escrow payment on the loan unless the loan was current at the time of the escrow analysis. *Id.* Thus, the *Hawthorne* court found it "possible to conclude [that] upon receipt of the letter, Hawthorne would have been induced to settle her debt, and the letter would have constituted a 'representation' made 'in connection with the collection of a[ ] debt.'" *Id.* (quoting 15 U.S.C. § 1692e (alteration in original)). There is no indication that the letter in *Hawthorne* contained a disclaimer like that in the 2022 and 2023 Escrow Statements, which both clearly state that "no action" is required on the part of the debtor. *See* ECF 11-5 at 2; ECF 11-7 at 2. Moreover, the *Hawthorne* court noted that other documents in the record, such as a mortgage statement detailing the amount Hawthorne owed the defendant, could also qualify as communications from the debt collector to the debtor made "in connection with the collection of a [ ] debt." *Id.* (quoting 15 U.S.C. § 1692e (alteration in original)). In this case, aside from the 2022 and 2023 Escrow Statements, ECF 11-5, 11-7, Plaintiff's claim does not rely on any communications made by Carrington in

connection with collection of a debt.[9]  *See Lovegrove v. Ocwen Home Loans Servicing, L.L.C.*, 666 F. App'x 308, 311-12 & n.5 (4th Cir. 2016) ("communications [that] were for informational purposes only, were non-threatening in nature, and contained clear and unequivocal disclaimers to establish that they were not in connect with the collect of a debt" under the circumstances were "not an attempt to collect a debt and the FDCPA [was] not implicated"); *Palazzo*, 2024 WL 4361857, at *10-*11 (finding *Hawthorne* unavailing to plaintiff's argument that mortgage statements were attempts to collect a debt for purposes of the FDCPA).

Plaintiff's reliance on *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260 (11th Cir. 2022), in support of her argument that the 2022 and 2023 Escrow Statements constituted debt collection activity is also unavailing. The Eleventh Circuit in *Daniels* held that the plaintiff plausibly alleged monthly mortgage statements were attempts to collect a debt under the FDCPA because the statements contained a delinquency notice, a disclaimer that they were "an attempt to collect a debt," a payment due date and description of late fees, a payment coupon with the defendant debtor collector's address, and payment instructions. *Id*. at 1268. Unlike the 2022 and 2023 Escrow Statements, the mortgage statements in *Daniels* did not state that they were sent for informational purposes or that they did not require action on the part of the debtor; instead, they included multiple features, such as the payment due date, payment coupon, and payment instructions, which, when "[v]iewed holistically" informed the debtor that they were "plausibly

---

[9] To the extent Plaintiff argues that the January 2023 Letter, ECF 11-6, is an attempt to collect a debt for purposes of the FDCPA, this argument also fails because the letter is informational, did not demand payment, and was clearly sent in response to Plaintiff "requesting a review of [her] account." *Id*.; *see Palazzo*, 2024 WL 4361857, at *12 (where "statement's objective purpose was to provide [plaintiff] with the mortgage loan account information he requested," it was not "an attempt to collect debt.").

related to debt collection." *Id.* (citation omitted).[10] Thus, the 2022 and 2023 Escrow Statements do not contain the features the *Daniels* court viewed as an attempt to collect on a debt. *See Palazzo*, 2024 WL 4361857, at *11 (finding "*Daniels* sheds no light on whether the monthly mortgage statements [debt collector] sent to [debtor] were an attempt to collect a debt" for purposes of the FDCPA).

Thus, under the commonsense inquiry, the 2022 and 2023 Escrow Statements were not attempts to collect a debt. The objective purpose of both statements was to provide Plaintiff with a summary of her annual escrow analysis, as required under RESPA and its applicable regulations. 12 C.F.R. § 1024.17(i). The disclaimer in both statements made clear that they were "informational only" and "require[d] no action" on Plaintiff's part. ECF 11-5 at 2, ECF 11-7 at 2. When evaluating FDCPA claims, the law presumes "a basic level of understanding and willingness to read with care." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996). Plaintiff has thus failed to plausibly allege debt collection activity to trigger application of the FDCPA and therefore cannot state a claim under § 14-202(11) of the MCDCA. *See Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 725 (D. Md. 2011) ("the threshold requirement for application of the [FDCPA] is that prohibited practices are used in an attempt to collect a debt." (citation omitted)); *Chavis v. Blibaum & Assocs., P.A.*, 264 A.3d 1254, (Md. 2021) (describing the MCDCA as a "remedial consumer protection [] statute[] the overarching purpose and intent of which is to protect the public from unfair or deceptive practices by creditors *engaged in debt collection activities*" (citation omitted) (emphasis added)).

---

[10] The *Daniels* court specified it was not holding "that the statements are, as a matter of law, communications in connection with the collection of a debt" but that plaintiff had "plausibly alleged that they are," noting that the result could be different on summary judgment. *Id.* at 1268 & n.3.

Count II of the Complaint also alleges a violation of § 14-202(8) of the MCDCA. ECF 2 ¶¶ 42-43. Under § 14-202(8), a debt collector, "[i]n collecting or attempting to collect an alleged debt," may not "[c]laim, attempt, or threaten to enforce a right without knowledge that the right does not exist." To prove a claim under this section of the MCDCA, a plaintiff must establish two elements: "(1) the debt collector did not possess the right to collect the amount of debt sought; and (2) the debt collector attempted to collect the debt knowing that it lacked the right to do so." *Chavis*, 264 A.3d at 553 (citations and internal quotations omitted). Plaintiff alleges that Carrington violated § 14-202(8) "[b]y claiming greater rights in the Webb Loan" when it issued the 2022 and 2023 Escrow Statements. (ECF 2 ¶¶ 39, 42, 43). Plaintiff's claim here fails for the same reason as her claim under § 14-202(11), namely that she has not established that any of the alleged communications from Carrington were an attempt to collect a debt. As discussed above, Carrington's issuance of the 2022 and 2023 Escrow Statements and the January 2023 Letter was not debt collection activity or an attempt to collect on a debt; by their own terms, the escrow statements were informational only and did not require action by the Plaintiff, ECF 11-5 at 2, ECF 11-7 at 2, and the January 2023 Letter was a response to Plaintiff's inquiry, ECF 11-6. A claim under § 14-202 requires debt collection activity. *See Chavis* 264 A.3d at 560 (describing § 14-202 of the MCDCA "as regulating the conduct of a person while engaged in debt collection"). Plaintiff has not sufficiently pled allegations of debt collection activity subject to the MCDCA, and thus her MCDCA claim must be dismissed.

**ii.    MCPA**

Under Count II, Plaintiff also alleges violations of the MCPA. ECF 2 ¶¶ 46-52. The MCPA "prohibits certain unfair, abusive, or deceptive trade practices in connection with 'the extension of consumer credit' or 'the collection of consumer debts.'" *Barr v. Flagstar Bank, FSB*, 303 F. Supp.

3d 400, 416 (D. Md. 2018) (quoting Md. Code Ann., Com. Law § 13-303(4)-(5)). To state a claim under the MCPA, a plaintiff must plead that "(1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury." *Id*. at 416 (internal quotation marks and citation omitted). Unfair or deceptive trade practices are defined, in relevant part, as any "[f]alse… or misleading oral or written statement… or other representation… which has the capacity, tendency, or effect of deceiving or misleading consumers; [and] failure to state a material fact if the failure deceives or tends to deceive… ." Md. Code Ann., Com. Law §§ 13–301(1), (3). An MCPA claim is subject to Rule 9(b)'s heightened pleading standard because it sounds in fraud. *Barr*, 303 F. Supp. 3d at 416. "A violation of the MCDCA also constitutes a per se violation of the MCPA as an 'unfair, abusive, or deceptive trade practice.'" *Chavis*, 264 A.3d at 1265 (citing § 13-301(14)(iii)). As detailed above, Plaintiff has not sufficiently alleged a violation of the MCDCA, and thus any derivative claim under MCPA is foreclosed. *See* § 13-301(14)(iii).

As for standalone violations of the MCPA, Plaintiff claims that Carrington engaged in "unfair, deceptive, and otherwise abusive acts and omissions" by "ignoring the rights and protections under Maryland law…related to Webb and he [sic] Webb Property;" failed "to conduct any reasonable investigation of Webb's disputes whatsoever;" and failed "to follow Maryland's collection laws or perform any reasonable investigation thereby ignoring the notice available to it while steadfastly relying upon the information [it] knew was prone to errors and mistakes and continuing to assert rights and methods of collection that do not exist." ECF 2 ¶ 50. These allegations lack the specificity required to pass muster under Rule 9(b) because they do not detail with the required particularity the false or misleading statements by Carrington to Plaintiff that had the capacity, tendency or effect of deceiving or misleading her. *See Barr*, 303 F. Supp. 3d at

416 (allegations that did not "describe the time, place, and contents of the false representations" failed to state MCPA violation); *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *9 (D. Md. Aug. 4, 2011) (Under Rule 9(b), the "circumstances" constituting fraud include "the time, place, and contents of…false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby…Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6)." (internal citation omitted)).

Moreover, Plaintiff has not established that the 2022 and 2023 Escrow Statements constitute unfair or deceptive trade practices under the MCPA. *See* Md. Code Ann., Com. Law §§ 13–301(1), (3). The allegations contained in the Complaint do not support a plausible inference that the 2022 or 2023 Escrow Statements were false or misleading or failed to state a material fact.[11] Under the Deed of Trust and RESPA, Carrington is permitted to "estimate" monthly escrow disbursement amounts in conducting an annual escrow analysis and to maintain a "cushion" to cover unanticipated disbursements from escrow. *See* ECF 11-3 at 3; 12 C.F.R. § 1024.17(c); *c.f. Allen*, 2011 WL 3425665, at *9 (plaintiff met MCPA's heightened pleading standard by pleading

---

[11] In accordance with RESPA and the Deed of Trust, the January 2023 Letter notes that a refund check was issued to Plaintiff for a project surplus in the escrow account. ECF 11-6 at 2; *see* ECF 11-3 at 3 ("If amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA."); 12 C.F.R. § 1024.17(f). The January 2023 Letter also notes that Plaintiff was eligible for three different tax credits in the 2022-2023 cycle, while in the 2021-2022 cycle, she was eligible for only one credit and thus had a larger tax payment. *See* ECF 11-6 at 2. This shows that Plaintiff's eligibility for some property tax credits, and thus the amount of property taxes she owed, could vary from year to year such that Carrington could not assume that Plaintiff automatically qualified for the same property tax credits each year. *See also* Homeowners' Property Tax Credit Program, https://dat.maryland.gov/realproperty/Pages/Homeowners'-Property-Tax-Credit-Program.aspx (noting that the "Homeowners' Tax Credit is not automatically granted and each person must apply and disclose his or her income" with the deadline to apply being October 1 of each year, but it is to a homeowner's advantage to submit the application so that any credit due can be deducted before the July tax bill is issued). Plaintiff does not allege that she applied for the HPT credit prior to April 15 during the tax years at issue such that the credit should have been applied and appeared on the 2022 and 2023 Escrow Statements.

the dates and contents of a myriad of oral and written statements that, when taken in combination, alleged with sufficient particularity a claim that defendant made false or misleading statements that had the capacity, tendency, or effect of misleading plaintiff about the status of his loan modification and his ability to cure the default).

Plaintiff has also failed to allege with particularity reasonable reliance on Carrington's alleged false or deceptive practices. Plaintiff's allegations describe her actions taken in engaging legal counsel and filing this lawsuit as "reliance" for purposes of the MCPA, ECF 2 ¶ 51; however, Plaintiff has not alleged that obtaining counsel and filing this action actions flow from a specific loss that resulted from practices deemed unlawful under the MCPA. *See Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 534-35 (D. Md. 2011) ("The requirement of reliance flows from the MCPA's prescription that the party's injury or loss be the result of the prohibited practice," *i.e.*, the misrepresentation or material omission (citation and internal quotations omitted)); Md. Code Ann., Com. Law § 13-408 ("any person may bring an action to recover for *injury or loss* sustained by him *as the result* of a practice prohibited by this title" (emphasis added)). The standard for reliance for MCPA misrepresentation and material omission claims is substantial inducement, *Bank of Am. N.A.*, 822 F. Supp. 2d. at 534-35, which means that a plaintiff must plead that a misrepresentation or material omission substantially induced a choice, *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 789 (D. Md. 2013). Here, Plaintiff has not alleged that she would have done anything differently had Carrington provided different information or that Carrington's alleged misrepresentation or material omission induced her to take an action from which she suffered an identifiable loss or injury. *Id.*; *Alexander*, 2020 WL 7319252, at *7. To the contrary, Plaintiff challenged Carrington's allegedly wrongful actions by first requesting a review of her account after receiving the 2022 Escrow Statement, *see* ECF 11-6 (January 2023 Letter),

and then retaining counsel and filing this litigation, ECF 2 ¶ 51. *See Lloyd v. Gen. Motors Corp.*, 916 A.2d, 257, 277 (Md. 2007) ("[T]he consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the ... misrepresentation."). Therefore, Plaintiff cannot establish a standalone MCPA claim.

Plaintiff has not sufficiently pled violations of the MCDCA and the MCPA. Accordingly, Carrington's motion to dismiss is also granted with respect to Count II.

## IV.    CONCLUSION

For the reasons set forth above, Carrington's motion to dismiss, ECF 11, will be GRANTED. Plaintiff's claims will be DISMISSED WITHOUT PREJUDICE. A separate order follows.

DATED:  January 16, 2025                              _____/s/_____
                                                                      Stephanie A. Gallagher
                                                                      United States District Judge